LOUIS FRITZ *v.* W. R. SIMS.

*(Jackson.*   April Term, 1909.)

1. **INJUNCTION.** Chancery has no jurisdiction to enjoin criminal prosecutions.

   The chancery court has no jurisdiction to enjoin criminal prosecutions.

   Case cited and approved: Sawyer, Ex parte, 124 U. S., 200.

2. **SAME.** Same. **Owner of lake is not entitled to injunction against further prosecutions for alleged violation of statute for protection of fish.**

   The complainant, claiming to be the owner of a lake, is not entitled to an injunction against an assistant game warden to prevent annoyance from further threatened arrests and prosecutions for fishing in such lake, upon the ground alleged by said officer that such fishing therein is in violation of the statute (Acts 1907, ch. 489) for the protection of fish.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County. F. H. HEISKELL, Chancellor.

RANDOLPH & RANDOLPH, for complainant.

A. H. MURRAY, for defendant.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

The complainant, claiming to be the owner, by grants from the State, of the body of land upon which are the waters of North Horn Lake, as well as the land surrounding these waters, filed the bill in this cause, charging that the defendant, who is an assistant game warden, assuming to act under the authority of chapter 489, p. 1649, of the session Acts of 1907, had arrested him for alleged violations of the terms of that act, and was threatening him with further arrests upon continued violation of the same, and asking that the defendant be perpetually enjoined from such an interference with the complainant.

It will thus be seen that the chief, and in fact the only, purpose of the complainant, in the institution of this suit, was to obtain relief by injunction from the annoyance of further prosecutions for assumed violations of the act in question. That the chancery court is without jurisdiction to grant such relief, we think, is well settled by the authorities. 2 Story, Eq. Juris., section 893; 3 Pomeroy, Eq.. section 1361, note; 22 Cyc., 903; 16 Am. and Eng. Ency. of Law, 370. As is said in the text of the work last above cited: "At one time the court of chancery in England exercised a jurisdiction partaking of a criminal character, but it was not without objection and protest from the Commons and the common-law court. It was excused, rather than justified, because of the inability of other tribunals to

Fritz v. Sims.

maintain internal peace and order, and because it was exercised for the defense of the poor and helpless. It passed away when the necessity of its exercise ceased, and the common-law tribunals were restored to power sufficient for the suppression of violence and wrong. It is a well-settled rule, both in England and America, that a court of equity has no jurisdiction to interfere by injunction to restrain a criminal prosecution, whether the prosecution be for violations of statutes or for an infraction of municipal ordinances." In the text of this work many illustrations, taken from the reports of the supreme court of the United States, as well as the courts of last resort of many of the States, and of the English courts, are given of the application of this rule.

One of the cases there referred to is that of *Ex parte Sawyer*, 124 U. S., 200, 8 Sup. Ct., 482, 31 L. Ed., 402. In the opinion in that case it is said that "under the constitution and laws of the United States the distinction between common law and equity, as existing in England at the time of the separation of the two countries, has been maintained, although both jurisdictions are vested in the same courts. . . . The office and jurisdiction of the court of equity, unless enlarged by an express statute, are limited to the protection of rights and property. It has no jurisdiction over the prosecution, the punishment, or the pardon of crimes or misdemeanors, or over the appointment or, removal of public officers. To assume such a jurisdic-

tion, or to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offenses, . . . is to invade the domain of the courts of the common law. . . ." The principle thus laid down is fortified by a reference to many cases, which had arisen both in American and English courts. The chancellor evidently recognized and applied it in the disposition of this case, and his decree dismissing complainant's bill is on this ground affirmed.