IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE
_____

**W. MICHAEL BYRD,**

      Plaintiff-Appellee,

Vs.

                                  C.A. No. 01A01-9703-CV-00139
                                  Davidson Circuit No. 89D-1655

**MARY ETTA BYRD,**

      Defendant-Appellant.

_____

FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY
THE HONORABLE MURIEL ROBINSON, JUDGE


Louise R. Fontecchio; Bruce, Weathers,
Corley, Dughman & Lyle of Nashville
For Appellee

Martha C. Wherry of Nashville
For Appellant




*AFFIRMED*

Opinion filed:

**FILED**

**August 27, 1997**

**Cecil W. Crowson
Appellate Court Clerk**



**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**




**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**DAVID R. FARMER, JUDGE**

      This appeal involves divorce-related proceedings. Plaintiff, W. Michael Byrd ("Husband"), appeals the trial court's dismissal of his petition to modify alimony, and defendant, Mary Etta Byrd ("Wife"), appeals the trial court's dismissal of her petition to hold Husband in contempt.

After approximately nineteen years of marriage, Husband filed a complaint for divorce on May 2, 1989. Wife filed an answer and counter-complaint for divorce, and Husband filed an answer to the counter-complaint. Wife filed a motion for *pendente lite* support for her and the parties' minor children, and on August 23, 1989, the trial court entered an order requiring Husband to pay the following as *pendente lite* support: $1,250.00 per month for the support of the parties' minor children, $750.00 per month in alimony, the $750.00 monthly note for the automobile that Wife was driving at that time, and Wife's attorney's fees. On September 19, 1989, Wife filed a "Petition for Contempt and/or Additional or Supplemental Relief and/or Request for a Hearing to Show Cause" to hold Husband in contempt for his failure to pay her *pendente lite* monthly car payments, which resulted in the automobile being repossessed, and his failure to pay her *pendente lite* attorney's fees. Also in this petition, Wife avers that Husband represented to the court in an August 16, 1989 hearing that he was paying $500 per month on a mortgage for the parties' real property located in Texas. Wife avers that Husband was not making these payments as he represented to the court. She requests that the court order Husband to begin making payments on this real estate, to pay any and all arrearages on the property, and to take the necessary steps to prevent foreclosure or sale of the property. On September 20, 1989, the trial court entered an order requiring Husband to show cause why he should not be held in contempt for violating the court's August 23, 1989 order by failing to pay the monthly note on Wife's automobile.

On October 17, 1989, Wife filed a motion requesting the court to amend its August 23, 1989 order to increase the amount of *pendente lite* alimony or to require Husband to hold Wife harmless for the marital debts. In this motion, Wife informed the court that Husband filed for bankruptcy in the United States Bankruptcy Court for the Middle District of Tennessee on September 21, 1989. On October 25, 1989, Wife filed a petition in the bankruptcy court seeking relief from the automatic stay to the extent that the stay affected her alimony and child support rights, and on October 27, 1989, the bankruptcy court entered an order granting her relief from the stay.

On February 26, 1990, the trial court entered an order on Husband's "Motion for Partial Relief from Previous Order" and on Wife's petition for contempt. The trial court reserved the issue of contempt pending a final hearing and did not modify its August 23, 1989 order. The

court ordered Husband to deliver possession of his car to Wife, to pay the note on this car, and to pay the $500 per month mortgage on the Texas property to protect the parties' property from foreclosure.

On July 18, 1990, Wife filed for bankruptcy in the United States Bankruptcy Court for the Western District of Oklahoma. A trial took place on July 23 and 24, 1990. On August 13, 1990, the trial court entered a decree granting Wife a divorce on the grounds of cruel and inhuman treatment, dismissing Husband's complaint for divorce, and ordering Husband to pay alimony *in futuro* in the amount of $1,000.00 per month, as well as child support. The trial court awarded Wife the automobile then in her possession and made Husband responsible for the monthly car payments. The court took the issue of the division of the marital property under advisement pending completion of the bankruptcy proceedings. The court also held the award of attorney's fees to Wife in abeyance pending the submission of affidavits to the court.

Wife filed a second contempt petition on November 16, 1990. The petition avers that Husband failed to make alimony and child support payments for September and October 1990 and that he also failed to make her car payment for the month of September. Wife requests, *inter alia*, that the trial court hold Husband in contempt for his failure to pay child support and alimony and that he be incarcerated until he purges himself of contempt. Wife also requests that he be held in contempt for his failure to pay the court-ordered car payments. The trial court entered an order on November 19, 1990 for Husband to show cause why he should not be found in contempt.

On February 14, 1991, the trial court entered an order stating that there were multiple claims for relief and that, pursuant to Tenn. R. Civ. P. 54.02, the court declared the parties absolutely divorced. The court reserved the right to divide the real and personal property upon the resolution of Wife's bankruptcy. The court also vested title to the automobile in Wife's possession in her name.

On November 12, 1991, Husband filed a petition to reduce his alimony payments. A hearing was held on December 12, 1991 concerning Wife's November 16, 1990 petition for contempt and Husband's petition to reduce alimony and child support. On January 7, 1992, the trial court entered an order stating that Husband had paid Wife $4,600.00 in back alimony

3

and child support and that he represented to the court that he had made payments on the Wife's automobile through October 1991 and would pay the November and December 1991 payments upon leaving court. In light of this, the court stated that Husband purged himself of contempt and dismissed Wife's contempt petition. The court also modified the alimony and child support awards to $500.00 each per month until September 1, 1992.

Husband apparently filed a motion for further review of his November 1991 petition, and on April 5, 1993, Wife filed a response in which she advised the court that both parties had received discharges in their respective bankruptcy proceedings. Wife further advised the court that foreclosure proceedings had been instituted on the parties' real estate in Texas. The trial court addressed Husband's motion in an order dated April 22, 1993 in which the court found that Husband's application was not made in good faith. The order provides in part:

> Upon testimony of the parties, argument of counsel, and the entire record herein, the court finds that Dr. Byrd, since the divorce was filed, has taken every effort in his power to defy the orders of the court and has deliberately become underemployed in order to avoid paying child support and alimony as heretofore ordered. The court finds that Dr. Byrd has a Medical degree and a Master of Public Health degree from Harvard University and the wherewithal to practice his profession. The court further finds that Dr. Byrd insists on doing things that do not generate income even though the court gave him the opportunity to rehabilitate himself by temporarily reducing alimony and child support while he pursued his Master's Degree at Harvard University. The court finds that this was not a good faith application to reduce alimony and child support and that he voluntarily continues to place himself in a position where he asserts that he can not comply with the court order. The court finds that the child support order will remain at $500.00 for the month of May after which time the child support will be terminated by operation of law, since the younger child will be 18 years old on May 15, 1993, and will graduate form High School during May 1993. The court further finds that Dr. Byrd has the ability to pay, that he has designed his own problems, and that Ms. Byrd continues to have the need for alimony that she exhibited at the Final Hearing.

The court ordered that the alimony award increased back to $1,000.00 per month beginning in June 1993 and ordered Husband to pay Wife's attorney's fees. The order was made final pursuant to Tenn. R. Civ. P. 54.02.

On May 3, 1996, Husband filed a motion to finalize the divorce by resolving the division of personal property, and Wife filed a response on May 9, 1996. In her response, Wife stated that the parties' real estate in Texas had been lost through bankruptcy and requested that

the court award her a judgment for the equity that would have been available had Husband made the mortgage payments.

On July 8, 1996, Husband filed a petition to modify alimony alleging that he was no longer able to make alimony payments because he suffered from severe health problems, was unable to work, and had incurred extensive medical bills because he did not have health insurance in that he had taken family medical leave from his medical practice to take care of his seriously ill father. On August 8, 1996, Wife filed her response to Husband's petition to modify alimony, and on August 27, 1996, she filed an amended response.

The trial court held a final hearing on August 26 and 27, 1996 on Husband's motion to divide the marital property, his motion to terminate or reduce alimony, and Wife's petition for contempt. Husband was not present at this hearing and his telephonic deposition and the deposition of Dr. Clinton Battle, who was once his treating physician, were admitted as exhibits. At the hearing, Wife argued that she had a contempt petition pending before the court, but the trial court stated from the bench that there was no pending contempt petition. The trial court stated that the January 1992 order, based on the December 1991 hearing, dismissed her November 16, 1990 contempt petition and that there was no other contempt petition before the court.

On September 11, 1996, the court entered an order on the issues raised in the final hearing held on August 26 and 27, 1996 on Husband's motion to finalize the divorce by dividing the marital property and on his motion to terminate or reduce alimony. In the order, the trial court stated that it had reviewed the deposition of Husband's doctor, Dr. Clinton Battle, and found that Dr. Byrd was unable to travel to the State of Tennessee to appear in the proceedings. Consequently, the court allowed Husband's telephonic deposition into evidence for purposes of the proceedings. The court found that the only marital assets owned by the parties that had not been previously divided, repossessed, or lost in the bankruptcy proceedings consisted of personal property in storage in Texas. The court found that the remaining marital assets were lost through the fault of both parties and that the parties had lived well beyond their means. The court awarded the parties' personal property in Texas to Wife and awarded to each party the remaining personal property in his or her possession. The trial court also dismissed Wife's petition for an increase in alimony because it was untimely filed and dismissed

Husband's petition for termination or reduction in alimony because he failed to carry his burden of proof. The order further provides that it is a final order disposing of all remaining issues in the case and states that any claims for relief filed by either party not heretofore or specifically addressed were denied.  Husband filed a motion to alter or amend the judgment. On October 9, 1996, Wife filed a motion to alter or amend the September 11, 1996 judgment as to the award to each party of the personal property in his or her possession. She also contends that the trial court never ruled on her contempt petition filed on September 19, 1989 as to Husband's failure to make the payments on the real property in Texas, which the court ordered him to make on February 26, 1990. On October 14, Husband filed a response to Wife's motion to alter or amend the judgment.

The trial court entered an order on October 28, 1996 denying Husband's motion to alter or amend. On November 18, 1996, the trial court entered an order denying Wife's motion to alter or amend the judgment.

Wife appeals the judgment of the trial court and presents two issues for review: 1) whether the trial court erred by failing to rule on Wife's petition for contempt filed September 18, 1989, and 2) whether the trial court erred by failing to make findings on her prayer for a judgment for losses arising from Husband's contempt of the court's order to keep certain mortgage payments current.

Husband also appeals the judgment of the trial court and presents an additional issue for review: whether there has been a material and substantial change of circumstances to warrant a modification of alimony.

In Wife's first issue, she contends that the trial court reserved the issue of contempt that she raised in her first contempt petition. She insists that the trial court later confused her two contempt petitions and further insists that the December 12, 1991 hearing addressed only her second petition. She also contends that Husband was in contempt of the trial court's February 26, 1990 order to pay the mortgage payments on the property in Texas and that the property was eventually lost through a bankruptcy proceeding. In addition, Wife contends that the trial court should have ruled on her claim for the equity in the property that would have been available for division at the final hearing had Husband obeyed the court order to make the mortgage payments on the property.

6

Although Wife contends that the trial court never addressed her first petition to hold Husband in contempt for his failure to make the mortgage payments, our review of the record indicates that this petition is not a petition to hold him in contempt on this particular issue. In her first petition, which she filed in September 1989, Wife sought to hold Husband in contempt for his failure to comply with the court's August 23, 1989 order on *pendente lite* support requiring him to pay the car payments on the car in her possession and to pay her attorney's fees. Also in that petition, she requested that the court order Husband to make the mortgage payments on the parties' real property in Texas. The trial court subsequently entered an order requiring him to make the mortgage payments, but reserving the issue of contempt as to the issues raised in that petition. Wife later filed a second contempt petition regarding Husband's failure to pay alimony and child support, and the issues as to contempt for the failure to pay alimony, child support, and car payments were all dealt with at the December 12, 1991 hearing and in the trial court's January 7, 1992 order.[1]

Wife's argument that her first contempt petition is a petition to hold Husband in contempt for his failure to make the mortgage payments on the Texas property is without merit. At the time she filed this petition, in September 1989, Husband was not under a court order to make these payments. The order requiring him to do so was not entered until February 26, 1990, several months after she filed her first contempt petition. In addition, the trial court dismissed her second contempt petition in an order entered January 7, 1992. Thus, the trial court was correct when it held that there was no contempt petition pending at the time of the August 1996 hearing.

In her second issue, Wife contends that the Texas real property was lost through Husband's bankruptcy proceedings and that she is entitled to a judgment for the losses arising from his failure to keep the mortgage payments on this property current. On the other hand, Husband contends that the property was repossessed and not lost through bankruptcy. Consequently, he maintains that the property was not part of the assets available for division at the final hearing.

Regardless of whether the property was lost through the bankruptcy proceedings or

---

[1] This order did not address attorney's fees, but this omission is not raised on appeal.

repossessed, the property was not part of the martial estate at the time the court divided the martial property. In addition, the trial court specifically stated in its September 11, 1996 order that the loss of the remaining marital assets was due to the fault of both parties. Moreover, Wife admits in her brief that there is no evidence in the transcript concerning the fate of this real estate. Therefore, this issue also without merit.

In Husband's issue, he contends that the trial court erred in denying his petition to terminate or reduce alimony because his inability to work as a result of his health problems constitutes a substantial and material change in circumstances. On application of either party, the court may decree an increase or decrease of alimony only upon a showing of a substantial and material change of circumstances. T.C.A. § 36-5-101(a)(1) (1996). The party seeking relief on the grounds of changed circumstances has the burden of proving the changed circumstances, which must be shown to have occurred after the entry of the divorce decree and must not have been foreseeable when the decree was entered into or in the contemplation of the parties when they entered into the support and alimony agreement. *See Elliot v. Elliot*, 825 S.W.2d 87 (Tenn. App. 1991); *McCarty v. McCarty*, 863 S.W.2d 716 (Tenn. App. 1992).

Our review is *de novo*, however, accompanied by a presumption of correctness of the trial court's findings of fact, which we must honor unless we find that the evidence preponderates against those findings. T.R.A.P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). We are also mindful that a trial court has wide discretion in the award of alimony. *Marmino v. Marmino*, 34 Tenn. App. 352, 238 S.W.2d 105, 107 (1950); *Harrington v. Harrington*, 798 S.W.2d 244, 245 (Tenn. App. 1990). We give a trial court's decision on these matters great weight and will only interfere with such a decision when we find an abuse of discretion. *Kelly v. Kelly*, 679 S.W.2d 458, 460 (Tenn. App. 1984). The trial court is obliged to consider each of the factors set forth in T.C.A. § 36-5-101(d)(1) when evaluating a petition to modify alimony, but the primary factors are the obligor's ability to pay and the obligee's financial need. *Elliott*, 825 S.W.2d at 90.

Husband argues that he has suffered severe health problems since the original alimony award and that he is unable to obtain gainful employment as a result of these health problems. He also argues that his extensive medical bills render him unable to make his alimony payments. The record indicates Husband left his employment to take care of his father who

was seriously ill and that, as a result, Husband lost his health insurance and incurred extensive medical bills. This obligation and its attending consequences were voluntarily assumed with full knowledge of his obligations of support to his former wife. Voluntarily assumed obligations do not constitute a change in circumstances. *Dillow v. Dillow*, 575 S.W.2d 289, 291 (Tenn. App.1978).

As to Husband's alleged inability to work, Husband submitted the deposition testimony of the doctor who treated him when he was admitted to the hospital for his health problems. This doctor was not treating Husband at the time he filed his petition to modify alimony, however, and Husband failed to offer the testimony of the physicians who were treating him at the time relevant to this petition. The only other evidence offered in support of Husband's position was his own deposition. In addition, there was evidence in the record that Husband could still perform some tasks that would lead to gainful employment consistent with his M.D. and his Master's Degree in Public Health from Harvard University, such as research and writing.

The trial court specifically stated that Husband failed to carry his burden of proof to show a substantial and material change in circumstances. The trial court in this case found that Husband had the ability to pay the award and that Wife showed a need for the continuation of alimony. From our review of the record, the trial court did not abuse its discretion. This issue is also without merit.

Wife also contends that Husband should pay the attorney's fees that she has incurred in this appeal to protect her alimony. In *Baggett v. Baggett*, 512 S.W.2d 292, 294 (Tenn. App. 1973), this Court held that an award of attorney's fees was inappropriate where both parties were partially successful on appeal. We decline, in this case, to award Wife attorney's fees incurred on appeal.

Accordingly, the trial court is affirmed in all respects. Costs are assessed one-half against Wife and one-half against Husband.

 

 

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____

**DAVID R. FARMER, JUDGE**